UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TODD BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. 1:11-cv-01716-MJD-TWP |
| WESTFIELD INSURANCE CO, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 66]**

On February 4, 2013, Defendant Westfield Insurance, Co. moved for summary judgment on all of the claims asserted by Plaintiff Todd Brown. [Dkt. 66]. On March 25, 2013, Mr. Brown filed his Response in Opposition to Defendant's Motion for Summary Judgment. [Dkt. 76.] Westfield filed a Reply to the Plaintiff's Response to the Defendant's Motion for Summary Judgment on April 22, 2013. [Dkt. 82.] After considering the briefs and designated evidence, the Court **GRANTS** summary judgment in favor of Westfield Insurance and against Todd Brown.

**I.     Undisputed Material Facts.**

The Court has jurisdiction over the parties' dispute pursuant to 28 U.S.C. § 1332(a) – diversity of citizenship. [Dkt. 1 (Notice of Removal).] Todd Brown owned property located at 665 South 625 West, Winchester, Indiana (the "Property") with his wife, Dadra Brown. [Dkt. 68-1 at 15; *Id.* at 17-18.] On May 4, 2010, a fire occurred at the Property causing damage to the Property (the "Loss"). [Dkt. 68-1 at 8:12-15.] At the time of the fire, Dadra Brown was alone in the house. [Dkt. 68-2 at 31:7-13.] At the time of the fire and Loss, both Todd and Dadra Brown

were named insureds on a policy of insurance issued by Westfield under number WNP 4379910 (the "Policy"). [Dkt. 68-4; Dkt. 68-1 at 87:3-4; Dkt. 68-2 at 18:4-18.] Todd Brown agreed that, based upon what he learned, Dadra Brown intentionally started the fire. [Dkt. 68-1 at 86:9-11.] Dadra Brown told Mr. Brown that she started the fire. [*Id.* at 70:17-22.] Mr. Brown also agreed that the Loss was the result of arson. [*Id.* at 89:22-24.]

Mr. Brown made a claim for coverage under the Policy for the Loss. On September 19, 2010, Westfield denied coverage for the Loss. [Dkt. 68-7.] Westfield's denial of Mr. Brown's claim was based on its conclusion that the cause of the fire was arson by Dadra Brown, which precluded coverage under the Intentional Loss provision of the Policy. [*Id.*] Secondarily, Westfield denied Mr. Brown's claim based on its conclusion that neither Mr. nor Ms. Brown were residents of the Property at the time of the Loss, which was a condition precedent to coverage. [*Id.*]

**II.   Legal Analysis.**

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." *Id*. In ruling on a motion for summary judgment, the court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. P. 56. To survive a motion for summary

judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Although neither party expressly addresses the substantive law that applies to this dispute, both parties cite to Indiana law and the Court agrees that Indiana substantive law governs. *Mercado v. Ahmed*, 974 F.2d 863, 866 (7th Cir. 1992) (holding that federal court sitting in diversity applies state substantive law). "Under Indiana law, insurance contracts are examined under the same rules of construction as any other contracts." *Eli Lilly & Co. v. Zurich Am. Ins. Co.*, 405 F. Supp. 2d 948, 953 (S.D. Ind. 2005) (citing *National Fire & Cas. Co. v. West by Norris*, 107 F.3d 531, 535 (7th Cir. 1997); *Indiana Farmers Mut. Ins. Co. v. Imel*, 817 N.E.2d 299, 302 (Ind. Ct. App. 2004)). "Where an insurance contract 'is clear and unambiguous, the language therein must be given its plain meaning.'" *Id.* (citing *Eli Lilly & Co. v. Home Ins. Co,*, 482 N.E.2d 467, 470 (Ind. 1985)). "[T]he interpretation of an insurance contract under Indiana law often presents issues of law well-suited for summary judgment." *Thompson Hardwoods, Inc. v. Transp. Ins. Co.*, Case No. 00-74-C H/K, 2002 WL 31040703, at *1 (S.D. Ind. Sept. 10, 2002) (citations omitted).

> **A.    Dadra Brown, a Named Insured, Intentionally Caused the Loss, Which Is Excluded from Coverage Under the Terms of the Policy.**
>
> **1.    The Undisputed Material Facts Show that Dadra Brown Intentionally Caused the Loss for Which Mr. Brown Seeks Insurance Coverage.**

Westfield seeks summary judgment in its favor on Mr. Brown's claims on the basis that the Loss was intentionally caused by one of the named insureds, Dadra Brown. The Policy excludes coverage to all insureds if the loss was intentionally caused by any one of the insureds. Specifically, the Policy provides under Section II – EXCLUSIONS:

      6.     Intentional Loss

    Intentional Loss means any loss arising out of an act an *Insured* commits or conspires to commit with the intent to cause a loss.

    In the event of such loss, *no Insured* is entitled to coverage, even *Insured* who did not commit or conspire to commit the act causing the loss.

[Dkt. 68-4 at 18 (page 22 of 44 of the Policy).]

To succeed in this defense, Westfield must prove that one of the insureds (either Plaintiff or non-party Dadra Brown) committed an act with the intent to cause the Loss. Here, Westfield has provided the deposition testimony of Mr. Brown that he agrees that Dadra Brown intentionally caused the fire that resulted in the Loss. Specifically, Mr. Brown testified:

    Q.    Based on what you've learned, do you agree that Dadra intentionally caused the fire?

    A.    Yes.

[Dkt. 68-1 at 22 (deposition page 86:9-11).] Mr. Brown argues that "it is disputed, for purposes of this motion, that Dadra Brown either intended to commit or did commit an act of arson," [Dkt. 76 at 2]; however, Mr. Brown has submitted no evidence to create a genuine issue of material fact as to his testimony that forecloses this issue. No objection was lodged to this question during the deposition. Although in ruling on a motion for summary judgment filed by Westfield, the Court must draw all reasonable inferences in favor of Mr. Brown, the **only** inference that can be drawn from Mr. Brown's admission that is that Dadra Brown, a named insurer on the Policy, intentionally caused the Loss by causing the fire at the Property. This is particularly true where Mr. Brown testified that Dadra Brown admitted to him that she started the fire. [Dkt. 68-1 at 70:17-22.][1] Mr. Brown offers no alternative inference to refute this conclusion.

---

[1] Mr. Brown's statement that Dadra Brown told him that she started the fire is not admissible to prove that Ms. Brown intentionally caused the fire because it is hearsay per Fed. R. Evid. 801(c). The Court can, however, consider Mr. Brown's testimony to show its effect on Mr. Brown and as

As stated in Mr. Brown's Response to Westfield's motion, "'[a]n insurer raising an arson defense must establish the truth of its claim of willful burning by the insured by a preponderance of the evidence.'" [Dkt. 76 at 5 (citations omitted).] Certainly, agreement by the Plaintiff that an insured willfully burned the Property is a greater weight of the evidence than that Dadra Brown **did not** intentionally burn the Property. *See Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349, 361 (Ind. 1982) ("'Preponderance of the evidence,' when used with respect to determining whether or not one's burden of proof has been met, simply means the 'greater weight of the evidence.'") (citation omitted). The Court finds that, based on the undisputed material facts, Dadra Brown intentionally caused the fire that resulted in the Loss at issue.

### 2. The Policy Is Not Ambiguous and Is Enforceable Against Mr. Brown.

Mr. Brown argues that even if Westfield proved that Dadra Brown intentionally caused the Loss, the Policy implies severable obligations and rights of both insureds and thus, Mr. Brown should be entitled to coverage under the Policy as an innocent coinsured. [Dkt. 76 at 12-13.] Mr. Brown argues that Westfield relies on a common law "joint basis" to deny coverage – that the actions of one insured is joint against all others. [*Id.*] But this is not the case. Westfield relied upon an express provision in the Policy that if "an *Insured* commits or conspires to commit with the intent to cause a loss", then "*no Insured* is entitled to coverage, even *Insured* who did not commit or conspire to commit the act causing the loss." [Dkt. 68-4 at 18 (page 22 of 44 of the Policy).] Mr. Brown has admitted that an insured (Dadra Brown) intentionally committed the

---

the basis for his personal knowledge to testify that he agreed Ms. Brown intentionally caused the fire. *See U.S. v. Hanson*, 994 F.2d 403, 406 (7th Cir. 1993) ("An out of court statement that is offered to show its effect on the hearer's state of mind is not hearsay.") (citation omitted); *see also* Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.").

Loss, and thus, the Intentional Loss provision by its own terms excludes the Loss from coverage.[2]

Mr. Brown has not shown any ambiguity with respect to the Intentional Loss provision. Mr. Brown argues that other Policy provisions provide for the limits of insurance in the case of more than one insured under the Policy (anti-stacking provisions) and thus the rights and liabilities of the insureds are severable, and not joint. [*See* Dkt. 76 at 12-13.] However, Mr. Brown's citation to other provisions of the Policy that do not conflict with the provision at issue does not prove the Policy is ambiguous. Indeed, Mr. Brown made no arguments that the anti-stacking provisions of the Policy conflicted with or somehow diminished the enforceability of the Intentional Loss provision.

Mr. Brown also argues that he had certain expectations with regard to his coverage for losses. [Dkt. 76 at 13 (citing to Affidavit of Todd Brown).] Yet, Mr. Brown's unspoken expectations that are not contained in the four corners of the Policy are irrelevant when the Policy is not ambiguous. "Where 'a contract is unambiguous, the intent of the parties should be determined by the language employed in the document.' Thus, if the contract is unambiguous, 'we give effect to the intentions of the parties as expressed in the four corners of the document.'" *Evan v. Poe & Assocs., Inc.*, 873 N.E.2d 92, 98 (Ind. Ct. App. 2007) (citations omitted).

---

[2] Westfield cites to *Cincinnati Insurance Company v. Compton*, 569 N.E.2d 728 (Ind. Ct. App. 1991), to argue that it needs to show by a "preponderance of the evidence, that arson, by the insured, caused the loss and that said arson falls within an exclusion of coverage to the policy." [Dkt. 67 at 8-10.] But here, Westfield does not need to prove that Dadra Brown committed arson. Rather, Westfield only needs to prove (pursuant to the language of the Policy) that Dadra Brown intentionally caused the Loss. Because Plaintiff has agreed that Dadra Brown intentionally caused the fire, and has introduced no evidence to controvert that fact, Westfield has proved that an insured intentionally caused the Loss. Although not essential to the decision, the Court notes that Mr. Brown also admitted that the fire was the result of arson. [Dkt. 68-1 at 89.]

Because Mr. Brown has failed to show that the Policy is ambiguous, his unspoken expectations are irrelevant to the application of the Policy.

Mr. Brown also relies upon *Iemma v. Adventure RV Rentals, Inc.*, 632 N.E.2d 1178, 1182 (Ind. Ct. App. 1994) and *American Economy Insurance Company v. Liggett*, 426 N.E.2d 136 (Ind. Ct. App. 1981) to argue that Indiana public policy supports recovery by an innocent coinsured. Neither of these cases support Mr. Brown's position. Although the courts in both *Iemma* and *Liggett* were faced with claims of innocent coinsureds, both cases relied on the fact that the policies at issue **did not** contain an express exclusion for the claim of an innocent coinsurerd where the loss was intentionally caused by another named insured. Both cases considered the impact of coverage on an innocent coinsured, but neither case involved the situation here where the Policy contains an express exclusion of coverage.

In *Iemma*, Dorman, the president of a trailer repair company (Adventure RV), committed arson which destroyed a trailer that was in the company's possession pursuant to a bailment from Iemma. 632 N.E.2d at 1180. Iemma made a claim under the company's insurance policy and was denied coverage because the trailer was destroyed as a result of arson. Iemma argued that although the insurance policy was void as to Dorman, a named additional insured under the policy, the company was an innocent coinsured. *Id.* at 1182. As Mr. Brown cites, the Indiana Court of Appeals considered whether the rights and obligations of the coinsureds were joint or severable. *Id.* However, because the policy was voided by Dorman, who solely owned and controlled the company, the company could not recover under the policy and neither could Iemma. *Id.* at 1183-85.

In *American Economy Insurance Company v. Liggett*, cited by the *Iemma* court, the Indiana Court of Appeals considered a situation similar to this case. In *Liggett*, a wife sought to

7

recover for a fire loss at her home that may have been intentionally caused by her late-husband. 426 N.E.2d at 137-38. The parties agreed that the wife was innocent of any culpability in causing the fire. *Id.* at 137. In determining that the wife, an innocent coinsured, could recover under the policy, the Court specifically noted that "[i]n the instant case, there is no policy language which the defendant can rely upon to support an exclusion." *Id.* at 144. This is the polar opposite of the Policy at issue. The Policy here contains an express exclusion barring recovery under the Policy by an innocent coinsured where another insured intentionally caused the loss. [Dkt. 68-4 at 18 (page 22 of 44 of the Policy).] The intentional loss provision of the Policy is enforceable.

In 2002, the Court in *Thompson Hardwoods*, found that the Supreme Court of Indiana would enforce the express provisions of a policy instead of resorting to "complex and indeterminate" caselaw. 2002 WL 31040703, at *5. In *Thompson Hardwoods*, the issue was whether a provision of the policy excluded intentional acts of a director (Mr. Thompson) as opposed to an employee, where the company (Thompson Hardwoods) sought coverage. The court held:

> At bottom, the extent of the insurer's obligation is a matter of contract. Where the contract resolves the question, this court predicts that the Supreme Court of Indiana would choose not to resort to the complex and indeterminate body of law that has developed in these corporate arson cases in the absence of specific policy provisions. The state court would instead simply enforce the policy provision, which in this case leads to the conclusion that Thompson Hardwoods is entitled to coverage for the losses caused by the fire even if the fire was deliberately set by Mr. Thompson. See, *e.g., Carroll v. Statesman Ins. Co.,* 509 N.E.2d 825, 827 (Ind.1987), *adopting in relevant part* 493 N.E.2d 1289, 1293 (Ind. Ct. App.1986) ("unless an insurance policy specifically excludes coverage once any party to the policy deliberately causes the loss, an innocent co-insured is entitled to recover"), citing *American Economy Ins. Co. v. Liggett,* 426 N.E.2d 136; *Property Owners Ins. Co. v. Hack,* 559 N.E.2d 396, 399 & n. 2 (Ind.App.1990) (innocent spouse rule applied "unless the policy specifically excluded coverage for all insureds in the event any insured deliberately caused a loss").

*Id*. The Court finds the same analysis applicable here. The Court does not consider public policy where an express provision of the Policy unambiguously resolves the parties' dispute. Because the Policy here unequivocally and expressly bars coverage for an innocent coinsured where the Loss is intentionally caused by another insured, the Court finds Mr. Brown barred from recovery.

The undisputed material facts demonstrate that Dadra Brown, a named insured, intentionally caused the Loss at issue which is excluded from coverage pursuant to the unambiguous terms of the Policy. Consequently, the Court GRANTS Westfield's Motion for Summary Judgment.

### 3. The Other Evidence Cited by Westfield Was Not Relied Upon by the Court.

The disposition of Westfield's Motion was made much more difficult by Westfield's failure to properly submit evidence to the Court. Westfield submits a significant amount of inadmissible evidence in an attempt to establish that Dadra Brown intentionally caused the Loss for which Mr. Brown seeks coverage. Westfield designates three sources of upon which the Court does not (and could not) rely to make its determination that an insured under the Policy intentionally caused the Loss: (1) Dadra Brown's deposition testimony; (2) the Fire Marshall report; and (3) the docket sheet representing criminal charges against Dadra Brown.[3] "Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (citations omitted).

---

[3] Westfield also cited to several pages of Mr. Brown's deposition testimony. Mr. Brown challenged a great many of this statements as not being admissible, however, the Court did consider Mr. Brown's testimony that he agreed Dadra Brown caused the fire. [*See supra*.]

Westfield cites to several pages of Dadra Brown's deposition in an attempt to prove that she intentionally started the fire that resulted in the Loss. [Dkt. 67 at 3-4.] However, Westfield ignores that Ms. Brown testified that she had short-term memory loss and did not know what happened the night of the fire. In the pages of Ms. Brown's deposition testimony that Westfield provided to the Court, Ms. Brown testified that she "had a nervous breakdown. I don't remember a lot about what happened" [Dkt. 68-2 at 19:1-2]; "had a short-term memory loss. I don't know where I was or what happened" [*Id.* at 19:9-10]; and "I don't remember a lot about that day" [*Id.* at 23:25].[4] More specifically, Ms. Brown testified in response to the question "You believe he's [the sheriff] correct that you started the fire?" with "I had to believe what I was told. I didn't know." [*Id.* at 30:4-6.] These statements show that Ms. Brown did not testify that she intentionally started the fire that caused the Loss, but that she did not recall, on the date of her deposition, what happened the night of the fire.

Westfield also sought to prove that Ms. Brown intentionally caused the fire by submitting the Fire Marshall's report of the fire. [Dkt. 68-5.] Although domestic records of regularly conducted activity can be admitted into evidence and overcome the hearsay rule, Westfield failed to authenticate this record and thus, it is not properly before the Court. Federal Rule of Evidence 902(11) provides:

> **(11) Certified Domestic Records of a Regularly Conducted Activity.** The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party

---

[4] Mr. Brown cites to pages 27:11-11 [sic] and 27:24-28:1 of Ms. Brown's testimony to contradict her alleged admission that she intentionally caused the fire. [Dkt. 76 at 1-2, 6-7.] However, Mr. Brown did not provide the Court with page 27 of Ms. Brown's deposition and that page was not provided by Westfield in its designation of evidence. As a result, the Court cannot and did not consider Mr. Brown's citations to page 27 of Dadra Brown's deposition in opposition to Westfield's Motion for Summary Judgment.

>reasonable written notice of the intent to offer the record – and must make the record and certification available for inspection – so that the party has a fair opportunity to challenge them.

Fed. R. Evid. 902(11). Westfield did not include any certification of the custodian of the Fire Marshall's report. The certification of the custodian is critical to both authenticate the document, as well as to overcome the hearsay rule as provided in Fed. R. Evid. 803(6). "[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial, . . . ." *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (citations omitted). Rule 803(6) provides:

>**(6) Records of a Regularly Conducted Activity.** A record of an act, event, condition, opinion, or diagnosis if:
>
>**(A)** the record was made at or near the time by – or from information transmitted by – someone with knowledge;
>
>**(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
>**(C)** making the record was a regular practice of that activity;
>
>**(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification**; and
>
>**(E)** neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6) (emphasis added). As Mr. Brown argues, the Fire Marshall report contains statements of hearsay that are inadmissible. Of course, Westfield could have properly authenticated the Fire Marshall's report and overcome the hearsay rule with respect to the statements contained therein had it followed the requirements of the Federal Rules of Evidence. As a result, the Court cannot and has not considered the Fire Marshall report in ruling on Westfield's Motion for Summary Judgment.

Although Westfield seeks to prove that Dadra Brown pleaded guilty to intentionally starting the fire at the Property, for some inexplicable reason, Westfield did not provide a copy of the judgment in Ms. Brown's criminal case. Instead, Westfield provided the Court with a copy of the Chronological Case Summary (CCS) from the case *State v. Dadra D. Brown*, Cause No. 68-C01-1007-FB-0051, in Randolph County. [Dkt. 68-6; Dkt. 83-1.][5] Although Docket 83-1, submitted with Westfield's Reply shows that Dadra Brown was originally charged with "Arson, 35-43-1-1(a)(2), a Class B Felony", that was later amended to "Criminal Mischief, 35-43-1-2(a)(2)(B)(i), a Class D Felony" with a finding of "Guilty," nowhere in the CCS is it explained **why** Dadra Brown was charged with Criminal Mischief or **to what she pled guilty**. The CCS does not explain that the charges related to the Property or the fire or the Loss. Based on the evidence submitted by Westfield, Dadra Brown could have been charged with Arson for damaging wholly unrelated property. Although Westfield could have provided the Court with a copy of the criminal complaint, the plea agreement, the transcript of the February 16, 2011 Guilty Plea and Sentencing Hearings, and/or the judgment, it did not. Moreover, Westfield did not explain the CCS with any testimony from Dadra Brown or any other witness.

The only deposition testimony submitted by Westfield related to Dadra Brown's criminal charges is as follows:

> Q. And did you actually go through a criminal trial **for this**? Did you enter into a plea agreement?
>
> A. I entered into a plea agreement.
>
> Q. Okay. Receive community service; is that correct?
>
> A. I had probation.

---

[5] Westfield initially submitted an uncertified copy of the CCS for *State v. Dadra D. Brown*, but Mr. Brown challenged the admissibility of this document. Consequently, Westfield submitted a certified copy of the CCS with its Reply brief. [Dkt. 68-6; Dkt. 83-1.] Yet, neither document proves that Ms. Brown intentionally caused the fire at the Property.

[Dkt. 68-2 at 39:19-23 (emphasis added).]  The testimony submitted by Westfield does not explain to what "this" refers in the question at line 19 and does not explain to what Dadra Brown admitted, if anything, in her plea agreement.  Westfield provides page 39 of Ms. Brown's deposition without the benefit of the preceding pages that may establish that "this" refers to the fire and Loss at issue.  However, the excerpts of Ms. Brown's testimony provided by Westfield does not establish that Dadra Brown intentionally set fire to the Property, and thus, it did not explain the CCS and was not relied upon by the Court in ruling on Westfield's Motion for Summary Judgment.

        **B.**    **The Court Need Not Consider Whether the Insureds Were Residents of the Property at the Time of the Loss.**

Westfield seeks summary judgment on a second basis – that the Loss was not covered under the Policy because neither Todd Brown nor Dadra Brown were residing at the Property at the time of the Loss.  The Policy provides coverage for the "dwelling on the residence premises", which is defined in relevant part as the "one family dwelling where you reside."  [Dkt. 67-4.]  Westfield argues that the Property was neither Todd nor Dadra Brown's "residence" at the time of the Loss.  Mr. Brown retorts that a dispute of material fact exists as to whether Mr. Brown intended to reside at the Property.  Because the Court has granted summary judgment in Westfield's favor with respect to its first basis for denying Mr. Brown's claim (that one of the insureds intentionally caused the Loss), the Court need not address Westfield's alternative ground for summary judgment.

        **C.**    **Westfield Did Not Commit Bad Faith.**

Mr. Brown alleges that Westfield committed bad faith in the handling of his claim.  Although both parties submit evidence supporting their positions with respect to the length of time between the claim and the denial, as well as Westfield's alleged failure to provide a full

copy of the Policy until discovery, this evidence is irrelevant in light of the Court's ruling that Westfield was correct in denying Mr. Brown's claim. Under Indiana law, "[a] rational or principled basis for denying a claim forecloses a recovery for bad faith." *Eli Lilly & Co*, 405 F. Supp. 2d at 957 (citing *Freidline v. Shelby Ins. Co.,* 774 N.E.2d 37, 42 (Ind. 2002)). Because the Court has found that Westfield had a rational and principled basis for denying Mr. Brown's insurance claim – that the Loss was intentionally caused by a named insured – Mr. Brown's claim for bad faith is foreclosed. As a result, the Court GRANTS Westfield's Motion for Summary Judgment with respect to Mr. Brown's claim for bad faith.

### III. Conclusion.

For the foregoing reasons, the Court finds that no genuine issue of material fact exists and Westfield Insurance Company is entitled to judgment as a matter of law. The Court **GRANTS** summary judgment in favor of defendant Westfield Insurance Company and against plaintiff Todd Brown on all of Plaintiff's claims.

Date: 05/10/2013

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Byron Joseph Davis
Attorney at Law
bjosephdavis@comcast.net

Anthony J. Oliveira
B. JOSEPH DAVIS, ATTORNEY AT LAW, P.C.
anthony_oliveira@comcast.net

Bruce P. Clark
BRUCE P. CLARK & ASSOCIATES
bpc@bpc-law.com

Court L. Farrell
BRUCE P. CLARK & ASSOCIATES
clf@bpc-law.com

Jennifer E. Davis
BRUCE P. CLARK & ASSOCIATES
jed@bpc-law.com

Katherine Yvonne Gappa
BRUCE P. CLARK & ASSOCIATES
kyg@bpc-law.com